UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MELANYA B.,[1]

                      Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

22-CV-6125MWP

**PRELIMINARY STATEMENT**

        Plaintiff Melanya B. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 9). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1)  whether the claimant is currently engaged in substantial gainful activity;
>
> (2)  if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)  if so, whether any of the claimant's severe impairments meets or equals one of the listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5)  if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 15-23).[2] At step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 1, 2016, her alleged onset date. (*Id.*). The ALJ noted that plaintiff had engaged in work activity since her alleged onset date, but that the activity did not rise to the level of substantial gainful activity. (*Id.*). At step two, the ALJ concluded that plaintiff had the severe impairments of ankylosing spondylitis, degenerative disc disease of the lumbar spine, fibromyalgia, and history of carpal tunnel syndrome, status post-2016 release. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (*Id.*). The ALJ concluded that plaintiff had the RFC to perform sedentary work requiring her to frequently finger with her right arm, occasionally stoop, kneel, crouch, or crawl, occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally reach overhead bilaterally. (*Id.*). Additionally, the ALJ concluded that plaintiff must avoid all hazards, including unprotected heights. (*Id.*). At steps four and five, the ALJ determined that plaintiff would be unable to perform her past relevant work but that other jobs existed in the national economy that plaintiff could perform, including the positions of document preparer, addresser, and toy stuffer. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

**III.     Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8-1, 10). First, plaintiff maintains that the ALJ failed to properly evaluate the supportability and consistency of the medical opinion submitted by her treating nurse practitioner Karen McMurtry, NP. (Docket # 8-1 at 12-18). According to plaintiff, in evaluating McMurtry's opinion, the ALJ placed undue emphasis on benign physical examination findings and plaintiff's activities of daily living. (*Id.*). Plaintiff maintains that reliance on examination findings was error because two of her impairments – ankylosing spondylitis and fibromyalgia – typically do not present objective findings on physical examinations. (*Id.*). In addition, plaintiff maintains that the ALJ failed to adequately explain how he interpreted the moderate fingering and handling limitations assessed by the examining consultative physician to permit work activity requiring frequent, as opposed to only occasional, fingering. (Docket ## 8-1 at 18-22; 10).

**IV.     Analysis**

Having carefully reviewed the ALJ's decision, I agree with plaintiff that the ALJ's determination was flawed, albeit on slightly different grounds than those identified by plaintiff. Review of the decision casts significant doubt on whether the ALJ considered Social Security Ruling 12-2p in evaluating the limiting effects of plaintiff's fibromyalgia. Indeed, nowhere in the decision does the ALJ refer to or cite the ruling. Moreover, even if he considered it, he appears to have applied it improperly – a failure that, along with mischaracterizations of the evidence, affected the ALJ's determination at step three and throughout the sequential

evaluation, including the ALJ's evaluation of the opinion evidence of record; as a result, this Court is unable to conclude that the ALJ's decision is supported by substantial evidence.

SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues." *See* SSR 12-2p, 2012 WL 3104869, *2 (July 25, 2012).[3] It is a "disease that eludes [objective] measurement." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have *normal physical examinations*, *e.g.*, full range of motion, no joint swelling, normal muscle strength and *normal neurological reactions*[;] [t]hus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to *confirm* its diagnosis." *Campbell v. Colvin*, 2015 WL 73763, *5 (N.D.N.Y. 2015) (emphasis in original) (footnote omitted); *accord Davis v. Berryhill*, 2018 WL 4629126, *4 (W.D.N.Y. 2018) (noting the common symptoms associated with fibromyalgia, including "body-wide pain and tender points in joints, muscles, tendons, and other soft tissues," as well as "fatigue, sleep problems, headaches, depression, anxiety, and other symptoms") (citation omitted).

Given the characteristics of fibromyalgia, and the fact that symptoms may "vary in severity over time and may even be absent on some days," SSR 12-2p advises that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [a claimant's fibromyalgia]." SSR 12-2p, 2012 WL 3104869 at *3, 5. Moreover, considering the

---

[3] "Although SSRs do not have the same force and effect as law, they are binding on all components of the Social Security Administration in accordance with 20 C.F.R. § 402.35(b)(1)." *Young v. Comm'r of Soc. Sec.*, 2020 WL 2028257 (W.D.N.Y. 2020).

absence of an objective test to diagnose the disease, an ALJ's assessment of a claimant's subjective statements "takes on increased importance in the context of fibromyalgia cases"; in discounting or rejecting a plaintiff's subjective complaints, the ALJ "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the determination is supported by substantial evidence." *McKillip v. Comm'r of Soc. Sec.*, 2019 WL 5677595, *7 (W.D.N.Y. 2019) (internal quotations and brackets omitted); *Davis v. Berryhill*, 2018 WL 4629126 at *5 ("when fibromyalgia is alleged, the credibility of a claimant's testimony regarding her symptoms must take on substantially increased significance in the ALJ's evaluation").

As an initial matter, at step three the ALJ did not identify which listed impairments he specifically considered, frustrating this Court's ability to determine whether he appropriately applied SSR 12-2p in determining whether plaintiff's fibromyalgia was medically equivalent to a listed impairment. Where, as here, a claimant's fibromyalgia is found to be a severe impairment at step two, the ALJ is required to assess whether it meets or medically equals the criteria of any of the listings. Because there is no listing for fibromyalgia, however, SSR 12-2p advises the ALJ to consider whether the impairment medically equals any other listing, such as listing 14.09, which is the listing for inflammatory arthritis. *See* SSR 12-2p, 2012 WL 3104869 at *6 ("[fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment[;] . . . therefore, [the ALJ] determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment").

In his decision, the ALJ did not indicate which specific listings he considered. Rather, the ALJ's entire step-three analysis provided:

> The pertinent [l]istings require specific findings that are not present in this particular case. For instance, the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment.

(Tr. 19). This analysis not only fails to identify the specific listings considered but is so conclusory as to preclude the Court from determining that it is supported by substantial evidence. Moreover, the failure to identify the specific listings or provide any rationale for the conclusion that plaintiff's fibromyalgia was not medically equivalent to a listing undermines any confidence that the ALJ properly applied SSR 12-2p. *See Rebecca P. v. Comm'r of Soc. Sec.*, 2023 WL 2955839, *4 (W.D.N.Y. 2023) ("this [c]ourt is not a medical professional, and fibromyalgia is a condition that is difficult to define and appreciate[;] . . . without some reasoned explanation as to why [plaintiff's] fibromyalgia-related physical impairments did not meet or medically equal one of the listings here, the [c]ourt cannot perform the meaningful review that it is required to perform"); *Robert T. S. v. Comm'r of Soc. Sec.*, 2022 WL 1746968, *9 & n.8 (N.D.N.Y. 2022) ("the ALJ's lack of consideration for the nature of fibromyalgia is also evidenced by the ALJ's failure to reference SSR 12-2p and discuss whether plaintiff met any relevant listings"); *Chiles v. Colvin*, 2017 WL 2703654, *3 (W.D.N.Y. 2017) ("[a]t step three, the ALJ did not mention any listed impairments that he specifically considered, so it is impossible for this [c]ourt to determine if the ALJ considered the impact of fibromyalgia on the various listings").

Further, review of the record and the ALJ's decision demonstrates that the ALJ fundamentally failed to understand the nature of plaintiff's fibromyalgia diagnosis and

8

mischaracterized the record evidence.  For instance, during the remainder of the sequential evaluation, the ALJ placed undue emphasis on plaintiff's "benign" physical examination findings.  In doing so, the ALJ failed to show an appreciation of "the well-settled understanding that fibromyalgia impairments may not manifest in abnormal objective findings." *Lisa E. v. Comm'r of Soc. Sec.*, 2021 WL 4472469, *7 (W.D.N.Y. 2021); *see also Green-Younger v. Barnhart*, 335 F.3d at 108 (fibromyalgia is a "disease that eludes [objective] measurement").

In the decision, the ALJ specifically noted plaintiff's "generally benign clinical findings," normal muscle tone, intact sensation, negative straight leg raise, normal gait, good strength, and normal grip strength.  (Tr. 20-21).  Indeed, in concluding that McMurtry's opinion was not persuasive, the ALJ relied heavily on the "overall benign clinical evidence."  (Tr. 21).  Such reliance is contrary to well-established principles governing analysis of disability determinations in cases involving fibromyalgia.  *See*, *e.g.*, *Ian S. v. Comm'r of Soc. Sec.*, 2021 WL 3292203, *3-4 (W.D.N.Y. 2021) (treatment notes highlighting plaintiff's "good strength and coordination, good muscle tone, intact sensation, and full range of motion with some pain" did "not undercut the diagnosis of fibromyalgia or [p]laintiff's complaints of symptoms[;] . . . [w]hen determining an RFC based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence – or lack thereof – related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record[;] denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error") (citation omitted); *Christine S. v. Comm'r of Soc. Sec.*, 2020 WL 3642244, *6 (N.D.N.Y. 2020) (holding the ALJ erred by placing emphasis on results of physical examinations; "[i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint

swelling, as well as normal muscle strength and neurological reactions[;] . . . the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced") (quoting *Green-Younger*, 335 F.3d at 108-109); *Poudrier v. Berryhill*, 2020 WL 1080446, *2 (D. Conn. 2020) ("[t]he ALJ . . . misapplied the relevant law in assessing [the physician's] opinions regarding the severity and effects of [plaintiff's] fibromyalgia . . . [by] emphasiz[ing] the fact that [plaintiff] had 'no abnormal musculoskeletal findings and no neurological deficits' and 'generally normal' physical examinations to support his finding of residual functional capacity"); *Ortiz v. Colvin*, 2014 WL 819960, *13 (D. Conn. 2014) (concluding the ALJ appeared to have "misunderstood the nature of fibromyalgia" by highlighting the lack of abnormalities during physical examinations in evaluating opinion evidence and plaintiff's subjective complaints).

        Moreover, in formulating plaintiff's RFC, the ALJ failed to adequately consider plaintiff's longitudinal treatment records, resulting in a mischaracterization[4] of her treatment history as demonstrating "stability" with respect to ankylosing spondylitis-related pain symptoms and "improve[ment]" in her symptoms overall. (Tr. 20-21). Importantly, "in discussing the assessment of an RFC, [SSR 12-2p] stresses the importance of considering 'a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days.'" *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 235 (E.D.N.Y. 2014)

---

[4] Plaintiff maintains that the ALJ also mischaracterized her activities of daily living; the Commissioner disagrees, maintaining that the ALJ's summary was supported by the record. (Docket ## 8-1 at 17; 9-1 at 16). This Court's review of the record suggests that while there is evidence to suggest that plaintiff engaged in substantial activities of daily living, the record also contains evidence that plaintiff's ability to engage in those activities on a sustained basis varied significantly throughout the relevant period. On remand, considering the nature of plaintiff's fibromyalgia diagnosis, the ALJ should conduct a longitudinal assessment of plaintiff's ability to engage in activities throughout the relevant period. *Susan C. v. Saul*, 2019 WL 4643717, *6 (N.D.N.Y. 2019) (acknowledging that an "assessment of the effects of [p]laintiff's fibromyalgia, and the impact it had on [p]laintiff's ability to engage in activities of daily living," should be based upon the "longitudinal record" as opposed to a "specific time frame").

(quoting SSR 12-2p, 2012 WL 3104869 at *3); *see also Campbell v. Colvin*, 2015 WL 73763 at *5 ("[w]hen fibromyalgia is established as a medically-determinable impairment, . . . all relevant evidence is considered, but *a longitudinal treatment record is of paramount importance*").

Review of plaintiff's treatment records demonstrates that although she was treated with a variety of infusions to manage her ankylosing spondylitis-related pain symptoms, including Simponi, Cosentyx, and eventually Remicade, the benefits of the infusions waned over time, causing her physicians to adjust the dosage and frequency of her infusions. (Tr. 331-85, 435-39, 525-34, 1255-86). Moreover, even when the infusions were beneficial, plaintiff experienced "flare-ups" several times per month, each lasting approximately three days. (Tr. 54, 331-33, 430-38, 580-81, 598, 1042). The records demonstrate that plaintiff was prescribed various additional medications to alleviate her pain, including prednisone, increased suboxone dosages, gabapentin and diclofenac, but none completely resolved her ongoing pain symptoms. (Tr. 331-85, 435-39, 525-34, 1255-86). For instance, in April 2018, plaintiff reported that she had experienced twenty-two "bad" days in March and approximately 17 "bad" days in April. (Tr. 525). Similarly, in September 2018, plaintiff reported experiencing only two good weeks per month while taking Cosentyx. (Tr. 1255). After being diagnosed with fibromyalgia in 2019, plaintiff consistently reported that she continued to struggle with intense fatigue, as well as persistent back and sciatic pain.[5] (Tr. 1259-86). For example, in August 2019, plaintiff reported that she had experienced a "rough" six months, noting that while the Cosentyx helped to manage her joint pain, she continued to experience significant muscle pain. (Tr. 1267-70). Her rheumatologist indicated that her fibromyalgia remained uncontrolled, causing her to experience

---

[5] Plaintiff was not diagnosed with fibromyalgia until January 2019, and it is difficult to determine from the medical records whether her complaints of pain were attributable to the ankylosing spondylitis condition, the fibromyalgia, or a combination of the two. (Tr. 1259-65).

11

intense fatigue and muscle aches. (*Id.*). At that time he discontinued plaintiff's Cosentyx infusions and prescribed Remicade. (*Id.*).

By November 2019, plaintiff reported that although the Remicade helped to alleviate her joint aches, she continued to experience intense fatigue, as well as back and sciatic pain, despite being on the highest permitted dosage of suboxone. (Tr. 1279-82). Treatment notes throughout 2020 suggest that plaintiff continued to report pain, although she acknowledged that the Remicade infusions she received every eight weeks helped to address her pain symptoms. (Tr. 1283-86). Despite indicating some improvement, plaintiff reported that the benefits from the infusion waned completely after five weeks. (*Id.*).

Thus, contrary to the ALJ's conclusion that plaintiff's symptoms were stable or "mostly improved" (Tr. 20-21), a longitudinal review of plaintiff's medical records demonstrates that, although she experienced some benefit from the various infusions she was prescribed, she continued to experience breakthrough symptoms throughout the relevant period and the infusions primarily alleviated her joint pain but not her muscle aches and fatigue. *See Laura B.-F. v. Comm'r of Soc. Sec.*, 2018 WL 9651144, *4 (D. Vt. 2018) ("[t]he ALJ did not discuss the medical evidence regarding [p]laintiff's fibromyalgia in the manner set forth in SSR 12-2p: the ALJ's findings do not rest on the 'longitudinal' picture provided by ongoing medical evaluation and treatment of [p]laintiff by her treating physicians").

In sum, having reviewed the administrative record and the ALJ's decision, the Court is unable to conclude with the requisite confidence that the ALJ considered and properly applied SSR 12-2p in evaluating plaintiff's claim. Specifically, the decision does not demonstrate that the ALJ considered medical equivalence for fibromyalgia at step three; moreover, the decision suggests that the ALJ failed to properly apply SSR 12-2p throughout the

remainder of the sequential evaluation by relying upon irrelevant physical findings and overlooking plaintiff's longitudinal treatment history.  Moreover, the conclusory nature of the ALJ's decision frustrates this Court's ability to review the ALJ's findings in order to determine whether they are supported by substantial evidence.  *Lisa E. v. Comm'r of Soc. Sec.*, 2021 WL 4472469 at *10 ("review of the ALJ's decision, particularly her repeated reliance on the absence of abnormal physical examination findings and mischaracterizations of plaintiff's activities of daily living throughout the sequential evaluation suggests that these errors likely affected the ALJ's evaluation of the other medical opinion of records, as well as her evaluation of plaintiff's subjective complaints").  Accordingly, remand is warranted.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

      *s/Marian W. Payson*
      MARIAN W. PAYSON
      United States Magistrate Judge

Dated: Rochester, New York
      September 18, 2024